Filed 3/11/14  P. v. Mendez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056980 |
| v. | (Super.Ct.No. RIF1102065) |
| JOSE MENDEZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Eric G. Helgesen, Judge. (Retired judge of the Tulare Mun. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Torres & Torres and Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina, Ron Jakob, and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Jose Mendez attended a party at the apartment where Jane Doe lived. Doe was eight years old at the time. While at the party, defendant forcibly took her to the bathroom, removed her pants and underwear, and licked her vagina. Doe's father found Doe crying in the bathroom and she told him she had been touched by defendant. Doe's father beat up defendant and the police were called.

Defendant was found guilty of oral copulation of a minor under 10 years of age (Pen. Code, § 288.7, subd. (b)) and sexual assault of a minor under the age of 14 years through the use of force, violence, duress, menace and/or fear of immediate and unlawful bodily injury (§ 269, subd. (a)(4)). Defendant was sentenced to a state prison term of 15 years to life.

Defendant makes one claim on appeal that his statements made to police at the scene were obtained in violation of his rights against self-incrimination pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) and should have been suppressed. We affirm the judgment.

I

FACTUAL BACKGROUND

A.    *People's Case-in-Chief*

1.    *Jane Doe's trial testimony*

Jane Doe was nine years old at the time she testified at trial. She was born in November 2002. Doe lived in a three-bedroom apartment in Corona with her mother, N.V., and her father, O.V.

On April, 10, 2011, N. and O. had a family party at the apartment. Doe's uncle and aunt were at the apartment and brought defendant with them. Everyone was dancing and the adults were drinking beer. Many of the people at the party were in the living room playing music on the computer.

Sometime during the night, defendant grabbed Doe's arm and took her to the bathroom.[1] Doe claimed defendant grabbed her wrist and it hurt. A photograph taken that night depicted a red mark on her wrist. However, at trial, Doe claimed that she got the mark on her wrist the day before the party while playing baseball in her uncle's backyard.

They went into the bathroom and defendant closed and locked the door. Doe first could not recall anything that happened in the bathroom. She then recalled that defendant sat her on top of the counter by the sink. Defendant took off her underwear and pants. [2] He then "licked" her "private areas" which she described as her "pee" area.[3] His head was on her stomach while he licked her. It felt "slimy" and "disgusting." Defendant kept his hands away from her and did not cover her mouth.

She felt wetness just above where she went pee. She told him to stop but he kept licking her. She initially stated that he never said anything to her but then said he asked

---

**1** Doe did not identify defendant in court but she did testify that O. beat up the man who was in the bathroom with her. There was no dispute that O. beat up defendant.

**2** On cross-examination she stated that her underwear was still on when she got up on the counter and then it was taken off.

**3** She pointed to her crotch area when asked where her "pee" was located.

her if she wanted to lick his "pee," which she declined. He also told her that he loved her.

Doe stated at trial that the man in the bathroom with her did not have any tattoos on his face or piercings on his face or ears. He had a mustache and a little hair underneath. She also said the man had one tattoo by his eye. O. and N. were in the kitchen while she was in the bathroom; she did not yell. She thought about screaming but she never did.

Defendant finished after about 13 seconds and turned off the light. He locked the door and left. Doe could not find the doorknob. O. finally got a key to the bathroom and let Doe out. Doe was crying because she was scared.

Later that night, she did not take a bath or go to the bathroom. However, N. told her to wipe herself with a baby wipe. She did not recall how much she wiped. Doe recalled seeing a nurse after this happened; she told the nurse the truth. She told the truth to the female officer she spoke to that night. She spoke with another woman about what had happened and she told the truth. Doe told her aunt that night that defendant touched her "pee-pee" with his hands.

2. *O.'s testimony*

O. saw Doe sitting next to defendant in the living room during the party. O. thought that defendant was being too friendly with Doe. O. did not observe defendant pull Doe into the bathroom. O. saw defendant walk away from the bathroom and proceed to sit on the couch. O. walked past the bathroom door; it was "half closed." The lights were off in the bathroom and he could hear Doe crying inside. She was hiding behind the

4

door.  Doe would not initially tell him what was wrong.  O. asked her if defendant had touched her and she immediately said yes.  O. found defendant still sitting on the couch.  O. asked him what he had done to Doe and then he punched him.

3. *Police investigation*

Corona Police Officer Jody Kozakowski spoke with defendant at the apartment. Defendant told her he was 28 years old.  Officer Kozakowski was called to the location at approximately 2:00 a.m. to relieve another officer.  Defendant was seated in a plastic chair outside the apartment.  Officer Kozakowski was assigned to stand near defendant while other officers were inside the apartment.  Officer Kozakowski and defendant talked about how defendant wanted to stay at the apartment in order to make statements about what had happened that night.  They also discussed, among other things, that his fiancée was pregnant and that he was a musician.  Defendant told Officer Kozakowski that he had been beaten up by the occupants of the apartment and they told him they were going to call the police.  Defendant told them to call the police because they would have to explain why they had beaten him up.  He said he had no reason to run.

Defendant told Officer Kozakowski that Doe came onto him and wanted him to go into the bathroom with her.  Defendant resisted her efforts.  Defendant went to the bathroom and found her there.  He also said she pulled him into the bathroom.  He asked her what she wanted and she responded, "What do you want."  Defendant then claimed he realized it was a bad idea to be in the bathroom with Doe and left.  Defendant admitted being in the bathroom with Doe for ten minutes.  He denied he urinated in front her. Defendant claimed that Doe was "all up on him."

5

Corona Police Officer Shannon Velasco indicated that defendant's appearance had changed since the night at the apartment. She had never seen him with tattoos on his face. Officer Velasco spoke with Doe on that night at the apartment. Doe told Officer Velasco that defendant took her into the bathroom in the hallway. Defendant went "pee" while they were in the bathroom. She was in the bathtub while he urinated. She said his underwear was blue. Defendant placed her on the counter and took off her pants and underwear. She wanted to yell for help but he put his hand over her mouth. She showed a mark on her wrist to Officer Velasco which she said she obtained when he dug his nails into her wrist.

Doe said defendant "licked her pee." She told him to stop because it was hurting her. Defendant told her he loved her. Doe also told Officer Velasco he licked her butt.

Doe was interviewed by a child abuse interviewer on April 26, 2011. Defendant (who she called Leche or Ritche) took her into the bathroom. Defendant asked her if she wanted to lick his pee. Defendant pulled down his pants. His underwear was blue or black. Defendant then urinated. She saw pee come out of his private part that looked like a "weenie." She wanted to leave the bathroom but there was some type of alarm on the door. Defendant made her stand in the bathtub while he urinated.

Doe claimed defendant had "lots of tattoos in his face, his wrist." Defendant told her she could not leave the bathroom. Defendant took off her clothes and licked her "pee." He sat her on the counter in the bathroom. Defendant tried to put his tongue "inside" of her and it hurt. His pants and boxers were down while he licked her. His hands were on the counter.

6

4.     *Physical evidence*

Mirella Del Degan was a certified sexual assault nurse.  Del Degan asked Doe why she was in the exam room with her.  Doe told her, "'[t]his guy took me into the bathroom and he licked my private.'"  Doe told Del Degan that defendant dug his fingers into her wrist and that it hurt.  Doe said he scratched her.  She explained to Del Degan that defendant went to the bathroom in front of her and he did not wash his hands.  He put his hand over her mouth so that she could not yell for help.

Del Degan observed red abrasive injuries on Doe's wrist.  The injuries were consistent with her being scratched.  There were no visible injuries on her vaginal area.  Del Degan then swabbed several areas including her upper inner thighs, her labia majora, and the vulvar area for potential DNA.

A swab was taken from defendant's mouth on April 10, 2011.  Defendant's navy blue underwear was taken into evidence.

Mark Traughber was a senior criminalist employed by the Department of Justice.  He was an expert in analyzing DNA.  Traughber tested the swabs taken from both defendant and Doe.  Traughber found no presence of semen.  On the samples taken from Doe's vulvar area there was no presence of male DNA.  On the sample taken from Doe's labia majora, a low amount of male DNA was found.  On her right thigh, there was a low amount of male DNA.  There was a higher level of male DNA found in the sample from her left thigh.

Traughber could only try to compare the male DNA found on her left thigh.  Defendant's DNA matched the sample taken from her left thigh.  The possibility that

7

another Hispanic male was the contributor was 1 out of 22 quadrillion. Traughber could not determine conclusively that the male DNA was from saliva.

B.    *Defense*

Joanna Mendez was married to defendant. She had never seen him be sexually inappropriate around children, including their nine year old daughter. Defendant never had tattoos. Joanna and defendant had been separated since 2006. She admitted he had not spent much time with their daughter since they separated.

Erick Quintanilla had been friends with defendant for a long time. Quintanilla had never seen him be sexually inappropriate with children.

II

ARGUMENT

STATEMENTS TO POLICE

IN VIOLATION OF DEFENDANT'S *MIRANDA* RIGHTS

Defendant contends that the trial court erroneously denied his motion to exclude his statements made at the scene because the record shows he was "in custody" and not free to leave when he gave incriminating responses to questions by Officer Kozakowski without first being advised of his rights as required by *Miranda.* According to defendant, *Miranda* warnings should have been given because the totality of circumstances show a reasonable person in his situation would have believed he was in custody when he was questioned by Officer Kozakowski.

8

A.    *Additional Factual Background*

Prior to trial, defendant filed a motion in limine seeking to exclude any statements he made to officers at the scene that were obtained without him being advised of his *Miranda* rights.  An Evidence Code section 402 hearing was held.  Officer Kozakowski testified.

Officer Kozakowski was called to the apartment at approximately 2:00 a.m.  She relieved another officer who was to get off his shift.  Officer Kozakowski stated her role was to "stand by" defendant.  Defendant was not handcuffed.  He was not told he was under arrest.  He was seated in a chair outside the residence and appeared relaxed.

Officer Kozakowski was in full uniform and had a gun on her belt.  There were three police cars on the scene.  The other officer was within a few feet of defendant when Officer Kozakowski arrived.  She remained a couple of feet from defendant.  Officer Kozakowski would have had to check with the other officers at the scene to determine whether defendant could have left if he wanted.

Officer Kozakowski spoke with defendant about various things while standing by him.  She spoke to him about being a musician and that his fiancée was pregnant.  Defendant told her how he got to the location that night with his friend.  Defendant told Officer Kozakowski that he was a victim of a crime and that is why he stayed.  He told her he had nothing to be afraid of and that he was beaten up by the occupants of the apartment.  He was not afraid when the occupants of the apartment told him that they were going to call the police.

9

Officer Kozakowski talked to defendant about the fight. Another officer pulled Officer Kozakowski aside and told her that there may be a warrant out for defendant's arrest but then determined it was not defendant. Defendant was asked to come to the police station to talk further about the events of the night and he willingly went to the police station. He was told that he did not have to go to the police station. He was additionally told he was not under arrest.

At some point, defendant told Officer Kozakowski the police were called because the occupants of the apartment thought he molested one of the girls in the apartment and so they beat him up.

The People argued that Officer Kozakowski was standing by defendant and maintaining the scene. Defendant was relaxed and sitting in a chair. He complained about being a victim of a crime. There was no indication that defendant was under arrest. Defendant volunteered why the occupants had beat him up. At no time did defendant believe there was a warrant out for his arrest. He was told he was not under arrest when they asked him to come to the police station. The People argued there was no indication that defendant believed he was detained.

Defendant's counsel argued the measure of whether defendant was detained is what a reasonable person would think, and not what defendant thought in his mind. It was clear that defendant was not free to leave because he was a molestation suspect.

The trial court ruled as follows: "Based on the testimony that I've heard, I made two observations. First, I do not find that this was a custodial situation. They wanted to talk to him. It was an investigatory-level thing to see what happened, what have we got

10

here.  We have someone who was allegedly beaten, we have an allegation of molest . . . Second, from what I heard, I don't believe this was an interrogation.  This was not a setting where they sat him down and asked him pointed questions.  They just were shooting the breeze and talking and it came up and they talked about him being the victim, and he talked about what he had been accused of.  But it wasn't the result of pointed questions that brought those things out.  And on that basis, I would deny a motion to keep that out."

B.    *Analysis*

"*Miranda* warnings are required 'as soon as a suspect's freedom of action is curtailed to a "degree associated with formal arrest."'  [Citation.]"  (*People v. Pilster* (2006) 138 Cal.App.4th 1395, 1403 (*Pilster*).)  "Custody determinations are resolved by an objective standard:  Would a reasonable person interpret the restraints used by the police as tantamount to a formal arrest?  [Citations.]  The totality of the circumstances surrounding an incident must be considered as a whole.  [Citation.]  Although no one factor is controlling, the following circumstances should be considered:  '(1) [W]hether the suspect has been formally arrested; (2) absent formal arrest, the length of the detention; (3) the location; (4) the ratio of officers to suspects; and (5) the demeanor of the officer, including the nature of the questioning.'  [Citation.]  Additional factors are whether the suspect agreed to the interview and was informed he or she could terminate the questioning, whether police informed the person he or she was considered a witness or suspect, whether there were restrictions on the suspect's freedom of movement during the interview, and whether police officers dominated and controlled the interrogation or

11

were 'aggressive, confrontational, and/or accusatory,' whether they pressured the suspect, and whether the suspect was arrested at the conclusion of the interview. [Citation.]" (*Id.* at pp. 1403-1404, fn. omitted.)

"[T]he term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island v. Innis* (1980) 446 U.S. 291, 301, fns. omitted.) Stated another way, "[t]he questioning prohibited by *Miranda* means 'substantive questions which portend to develop the facts under investigation.' [Citations.]" (*People v. Patterson* (1979) 88 Cal.App.3d 742, 748.) "In deciding whether police conduct was 'reasonably likely' to elicit an incriminating response from the suspect, we consider primarily the perceptions of the suspect rather than the intent of the police." (*People v. Davis* (2005) 36 Cal.4th 510, 554.)

"The question whether defendant was in custody for *Miranda* purposes is a mixed question of law and fact." (*People v. Ochoa* (1998) 19 Cal.4th 353, 401.) "We apply a deferential substantial evidence standard to the trial court's factual findings, but independently determine whether the interrogation was custodial. [Citation.]" (*Pilster, supra,* 138 Cal.App.4th at p. 1403.)

First the trial court did not err by finding that defendant was not in custody as the facts do not support a reasonable person in defendant's position would feel he was not free to leave. Officer Kozakowski was by herself outside and was only briefly joined by

12

another officer. Officer Kozakowski never informed defendant he was under arrest and he voluntarily went to the police station after his statements to her.

An additional factor to consider is whether the suspect agreed to the interview. (*Pilster, supra*, 138 Cal.App.4th at p. 1403.) Here, defendant told Officer Kozakowski he wanted to stay and tell the police that he had been beaten up by the occupants of the apartment. The totality of the circumstances established that defendant was not in custody.

Further, the evidence did not establish that defendant was interrogated. Officer Kozakowski described a casual conversation with defendant. He was relaxed and seated in a chair. They discussed his employment as a musician and that his fiancée was pregnant. He volunteered statements he wanted to make: he had been beat up by the occupants of the apartment. Officer Kozakowski did not question defendant about what had happened but at some point he volunteered statements that he had been in the bathroom with Doe. Defendant was told he did not have to go to the police station after making the statements but that they wanted to take him to the station to be interviewed. Defendant agreed to go to the police station. The evidence before the trial court established that defendant was not subject to interrogation by Officer Kozakowski but rather was engaged in a casual conservation during which he volunteered incriminating statements.

Even if we were to find that a *Miranda* violation occurred, "[t]he erroneous admission of statements obtained in violation of *Miranda* is reviewed for prejudice pursuant to *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*). [Citations.] Under

13

*Chapman*, reversal is required unless the People establish that the court's error was 'harmless beyond a reasonable doubt.' [Citation.]" (*In re Z.A.* (2012) 207 Cal.App.4th 1401, 1422.) "Under [the *Chapman*] test, the appropriate inquiry is 'not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' [Citation.]" (*People v. Quartermain* (1997) 16 Cal.4th 600, 621.)

The instant case does not turn on defendant's statements to Officer Kozakowski, but rather on Doe's testimony and the DNA evidence. Doe certainly had many inconsistencies in her various statements made to the police, the sexual abuse interviewer and even at trial. However, she consistently stated that defendant had licked her on her "pee," her private area. That testimony was corroborated by the DNA evidence which showed a minor amount of male DNA on her labia majora and a large amount, which matched defendant, on her thigh. Defendant was seen leaving the bathroom by O. Defendant's statements only added to the already overwhelming evidence of defendant's guilt but cannot be attributed to the guilty verdict.

The People contend that the statements made by defendant were not a confession to the crimes and therefore did not contribute to the People's case. In closing argument, the prosecutor argued that the statements made by defendant were "stupid" and "puts the nail in the coffin" that he committed this act. If he was innocent, he would not have said they had to go inside to do something. Defendant admitted that he was inside the bathroom for ten minutes with her. The prosecutor argued, "What is a grown man doing in a bathroom, after drinking, for ten minutes with an eight-year-old child?" The

14

prosecutor clearly used his statements to show defendant's guilt. However, it was not the only evidence and had the statements been excluded, defendant would still have been found guilty.

Defendant complains on appeal that the DNA evidence was weak. However, below, defendant's counsel essentially conceded the DNA evidence was important in arguing only an attempted crime was committed (he only licked her thigh) while admitting some contact occurred. The minimal DNA evidence found in her vagina was explained by the sexual assault nurse as likely being caused by her wiping herself with the baby wipe.

Finally, it is clear from the instructions that the jury did not convict defendant solely on the basis of his statements. The jury was instructed as follows: "You have heard evidence that the defendant made oral or written statements before the trial. You must decide whether the defendant made any of these statements, in whole or in part. If you decide that the defendant made such statements, consider the statements, along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the statements . . . . The defendant may not be convicted of any crime based on his out-of-court statements alone. You may only rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime or a lesser included offense was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed." We presume the jury followed the instructions. (*People v. Yeoman* (2003) 31 Cal.4th 93, 139.)

Based on the foregoing, we find the trial court properly admitted defendant's statements to Officer Kozakowski at trial, and even if the statements should have been excluded, any error was harmless beyond a reasonable doubt.

## III

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

RAMIREZ

P. J.

CODRINGTON

J.

16